# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA McCOLLUM | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 21-5489 |

**O P I N I O N**

SCOTT W. REID                                                                    DATE:  June 13, 2022
UNITED STATES MAGISTRATE JUDGE

      Monica McCollum brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has responded.  For the reasons set forth below, I will remand this matter to the Agency to obtain a report from an independent medical consultant.

      I.     *Factual and Procedural Background*

      McCollum was categorizable as "closely approaching advanced age" on the date she filed her application for disability, and moved into the category of "advanced age" (i.e., 55 years old or older) prior to December 31, 2020, her date last insured.[1]  Record at 315, 20 C.F.R. §404.1563(d) and (e).  She completed a graduate degree in elementary education. Record at 47-8; 369.  McCollum has worked in the past as a lead preschool teacher and as a program director for a preschool.  Record at 369.

---

[1] McCollum has expressed concern about disclosing her exact birthdate in a publicly filed document.  *Petition* at 1, n. 2.  Her birthdate can be found in the Record at page 315 and elsewhere.

On January 7, 2016, McCollum filed an application for DIB. Record at 315. She alleged disability since April 15, 2015, on the basis of cervical and lumbar radiculopathy, and nerve damage in the hands arising from a re-tear of a ligament in the wrist ("TFC"). Record at 315, 368. She ultimately added allegations of degenerative disc disease, status post-ulnar nerve decompression, plantar fasciitis, depression, and anxiety. Record at 44.

McCollum's application for benefits was originally denied on March 21, 2016. Record at 106. After a *de novo* hearing before an Administrative Law Judge ("ALJ"), McCollum was again denied benefits on April 25, 2018. Record at 119. The Appeals Counsel, however, remanded her case to the ALJ. Record at 135. It directed the ALJ to clarify the amount of overhead reaching required in McCollum's previous work as a preschool teacher, and explain the basis for his finding that she could only occasionally reach overhead, obtaining additional testimony from a vocational expert if necessary. Record at 137-8.

A different ALJ held a second hearing in McCollum's case on June 16, 2020. Record at 38. She took additional evidence from McCollum, as well as from a vocational expert. Record at 44, 67. On May 5, 2021, this ALJ also denied benefits in a written decision. Record at 12. This time, the Appeals Counsel denied McCollum's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. McCollum then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.

*Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.  The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that McCollum suffered from the severe impairments of degenerative disc disease with radiculopathy in the cervical and lumbar spine; hereditary idiopathic peripheral neuropathy; and obesity.  Record at 15.  She found that McCollum's other impairments, such as thyroid disease, osteoarthritis, status post release of the tendon in her wrist, status post left ulnar neuropathy, plantar fasciitis, and mental impairments, were not severe.  Record at 15-17.  She found that no impairment, and no combination of impairments, met or medically equaled one of the listed impairments.  Record at 17.

The ALJ concluded that McCollum retained the RFC to engage in work at the light exertional level, except that she could reach overhead, handle, and finger bilaterally only frequently (as opposed to constantly); could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and would need to change positions hourly, although remaining on-task.  Record at 19.

Work at the light exertional level requires the ability to lift ten pounds frequently, and twenty pounds occasionally.  20 C.F.R. §404.1567(b).  It can also require very little lifting, but a "good deal" of walking or standing.  *Id*.  Sedentary work requires lifting no more than ten pounds, and only occasional walking and standing.  20 C.F.R. §404.1567(a).

Relying upon the testimony of the vocational expert who appeared at the hearing, the ALJ found that McCollum could not return to her past relevant work as a preschool teacher, but could return to her past relevant work as a program director, which was defined by the vocational expert as work as an educational (or teaching) supervisor, under Dictionary of Occupational Titles ("DOT") §099.117-026, as it was actually, and as it is generally performed.  Record at 28-9.  She decided, therefore, that McCollum was not disabled.  Record at 29-30.

4

In McCollum's Request for Review, she argues that the ALJ erred in finding that her work as a teaching supervisor was "past relevant work" within the meaning of Social Security law. She also maintains that the ALJ wrongly evaluated the medical opinion evidence in her case.

IV.   *Discussion*

    A.   *Past Relevant Work*

A job is "past relevant work" for the purposes of the fourth stage of the sequential evaluation only if (1) it was performed at a "substantial gainful" level as defined in the SSA regulations; (2) was performed within the past 15 years; and (3) "lasted long enough for you to learn to do it." 20 C.F.R. §404.1560. The ALJ found that McCollum's work experience as a program director/teacher supervisor was past relevant work because, *inter alia*, it "[was] perfor[med] long enough for the claimant to learn [it]." Record at 29. McCollum argues that this was an erroneous finding. She maintains that her work as a teaching supervisor was not performed for the necessary duration to meet the third §404.1650 criteria.

Under the regulations:

> Duration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work.

SSR (Social Security Ruling) 82-62. McCollum points out that, under the DOT definition, the position of teaching supervisor has a Specific Vocational Preparation ("SVP") level of 8, which means that it requires "over 4 years up to and including 10 years" to learn it. DOT 099.117-026; DOT Appendix C. McCollum worked as a teaching supervisor for between three and four years. Record at 573.

5

Even the DOT, however, does not limit SVP to the time actually spent in the job at issue. DOT Appendix C, 1991 WL 688702 (Jan. 1, 2016) at II.  According to the DOT, "specific vocational training" includes training given in a number of circumstances, including "vocational education ( … that part of college training which is organized around a specific vocational objective);" and "essential experience in other jobs (serving in less responsible jobs which lead to the higher grade job or serving in other jobs which qualify)." *Id*.

McCollum had a master's degree in elementary education at the time she became a teaching supervisor.  Record at 47-8.  After she obtained the teaching supervisor position, she also completed a post-graduate course to be certified as a school program director.  *Id*.  This is considerable "college training organized around a specific vocational objective."  Further, McCollum worked as a lead teacher for five years before becoming a teaching supervisor. Record at 81-3.  This was certainty essential experience in a "less responsible job leading to the higher grade job."

When McCollum's education and essential experience is viewed in combination with her three years as a program director, it is clear that the ALJ's decision that she had sufficient vocational preparation to make her work as a teaching supervisor "past relevant work" was well supported.  *See Bustamante v. Colvin*, Civ. A. No. 13-02080, 2015 WL 136016 (D. Az. Jan. 9, 2015), (nine months of experience as a construction project manager was "past relevant work" where the claimant worked as a construction superintendent for the prior ten years).

> B.      *The Medical Opinion Evidence*

McCollum maintains that the medical opinion evidence shows that she can perform no more than sedentary work, and that the opinions are well-supported by the other evidence of record.  She argues that she is therefore unable to do her past relevant work, which is performed

6

at the light exertional level. Consequently, according to McCollum, the ALJ's decision at the fourth stage of the sequential evaluation is erroneous, and she should have progressed to the fifth stage.

Further, McCollum argues that, at the fifth stage, she is entitled to a finding of disability under 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly known as "the Grids." Rule 201.14 of the Grids directs that a claimant in the category of "closely approaching advanced age" with McCollum's other vocational factors should be found disabled if she is limited to sedentary work.

      1.    *The Physical Therapy Report and Dr. Osterman's Report do not Contradict the RFC Assessment*

          a.    *The Physical Therapist's Functional Capacity Evaluation*

The ALJ gave "no weight as a medical opinion" to a Functional Capacity Evaluation performed by physical therapist John Connors on October 27, 2015. Record at 28. According to McCollum, the ALJ should have accepted Connors' observation that "The results of the patient's Dynamic Maximum Effort Lifting Test indicate Ms. McCollum could be categorized below the minimum Sedentary Work Class which requires up to a 10 pound occasional lift … ." Record at 747.

McCollum's quote from the report does not, however, convey the overall sense of Connors' summary. After stating that McCollum "could" be categorized as below the sedentary level, Connors wrote in his summary that certain test findings "appear[ed] to cloud a true picture of Ms. McCollum's present functional ability." Record at 747. He was apparently referring to two questionnaires he administered during testing which indicated "inappropriate illness behavior"; two other questionnaires which indicated inappropriate symptom reporting,

7

particularly regarding neck pain; and two different tests of grip strength which showed inconsistent effort.  Record at 742, 743, 744.[2]

Since Connors himself did not consider the Functional Capacity testing results reliable, they could not have been credited by the ALJ.  Therefore, even though McCollum is correct in pointing out that a physical therapist's findings can be important despite the fact that he is not an "acceptable medical source,"[3] Connors' report does not support her claim of disability.

          b.     *Dr. Osterman's Reports*

McCollum argues that the ALJ misread the reports of her hand orthopedist, Lee Osterman, M.D.  Dr. Osterman performed an ulnar nerve decompression on McCollum's left arm in April, 2016, and continued to treat her for bilateral peripheral neuropathy in her wrists, as well as bilateral mechanical wrist pain.  Record at 810, 1063.  Significantly, reports from both before and after McCollum's surgery stated that, "from the hand, wrist and arm point of view," McCollum was restricted to "only sedentary to light duty" work.  Record at 640 (January 4, 2016); 1064 (September 11, 2017).  The ALJ gave Dr. Osterman's reports partial weight.  Record at 27.

McCollum argues that the ALJ erred in failing to recognize that, in her case, a limitation to sedentary work would direct a finding that she was disabled under Grid Rule 201.14.  However, without any indication of the exact amount of weight Dr. Osterman believed McCollum could lift, or the amount of reaching she could do, the ALJ would logically have read

---

[2] The summary actually reads:  "There was no inappropriate illness behavior in the analysis of her pain questionnaires."  However, the word "no" appears to be a typographical error, given that the earlier part of the report clearly states that pain questionnaire results showed inappropriate illness behavior, and given that Connor's next sentence stated that the test results were unreliable.  Record at 742, 743.

[3] Under the regulations which apply to cases such as this, which were filed before new rules were adopted on March 27, 2017, information from a therapist cannot establish the existence of a medically determinable impairment, but it "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 6-03p.

8

his limitation of her to "sedentary to light duty" work to include the ability to perform light work as it pertained to the use of her hands, wrists, and arms. This was the conclusion reached by the ALJ in his RFC assessment. Thus, McCollum has not shown that Dr. Osterman's report contradicted the results in her case.

2. *Reports from Back Specialists Drs. Levenberg and Valentino*

a. *Dr. Levenberg*

Unlike the reports submitted by physical therapist John Connors and Dr. Osterman, the "Work/School Status Note" submitted by Richard Levenberg, M.D., an orthopedist who treated McCollum for her back impairments, was flatly inconsistent with the RFC assessment which permitted her to perform light work. In the note, which was dated January 6, 2016, Dr. Levenberg wrote: "Patient's permitted activity is walking or standing only occasionally, occasional lifting of 10 pounds maximum and/or carrying articles like small tools." Record at 719. He added: "Permanent Restrictions." *Id.* In a treatment note of the same date, Dr. Levenberg wrote of McCollum: "She is able to perform a sedentary position and that will be a permanent restriction." Record at 717.

The ALJ rejected Dr. Levenberg's January 6, 2016, opinion for a number of reasons. Record at 28. Some of them are less than convincing. For example, the ALJ wrote that the report "does not preclude work." In this instance, however, Dr. Levenberg's precise and detailed limitation of McCollum to sedentary work would preclude her from returning to her past relevant work, and compel a finding of disability under Grid Rule 201.14. Further, it makes little sense for the ALJ to call Dr. Levenberg's note "vague" or find "problematic" his "lack of explanation to justify his restrictions." Record at 28. A work note would not typically include a detailed medical explanation. Further, the treatment note setting forth a restriction to sedentary work was

9

at the end of a multi-page description of the results of a physical examination.  Record at 714-717.

Finally, objective testing from 2017 clearly demonstrates a medical basis for McCollum's claimed back pain.  Although July 19, 2017, imaging found only mild spondylosis (age-related degeneration) in the lumbar spine, an epidurography performed on May 5, 2017, showed lumbar radiculopathy.  Record at 1109, 1110.  A March 6, 2017, nerve study showed evidence of chronic radiculopathy at one location in the lumbar spine, and one location in the cervical spine.  Record at 1114.  A February 13, 2017, electromyogram showed "mild to moderate" spondylosis at one location on the cervical spine.  MRIs of the cervical and lumbar spine from the same day showed "mild to moderate" narrowing at several locations on the cervical spine, and "mild to moderate" lumbar narrowing in the lumbar spine at L4-5.  Record at 1115-1118.

Nevertheless, as the ALJ noted, Dr. Levenberg's January 6, 2016, examination findings included full strength in the upper and lower extremities, with a pain free range of motion everywhere but in the cervical spine, normal sensation, and a negative Tinel's sign, which refers to an absence of the "pins and needles" feeling which would indicate nerve damage.  Record at 715-716.  Other physical examinations conducted by Dr. Levenberg were similar, reporting pain, an antalgic gait,  and a limited range of motion in the shoulders, but normal strength, tone, posture, and sensation.  Record at 699-700 (July 15, 2015); 705-6 (September 9, 2015); 710-711 (November 11, 2015).  Although there is no dispute that McCollum has spinal abnormalities, these largely unremarkable physical findings do not strongly support limitations as extreme as those found by Dr. Levenberg.

The ALJ also noted that, when Dr. Levenberg first examined McCollum in September, 2015, he reported: "Multiple Waddell signs present on physical examination." Record at 22, 707. Waddell signs test for non-anatomic pain, i.e., pain which does not have an anatomical explanation. National Library of Medicine, ncbi.nlm.nih.gov/books/NBK519492/. This is sometimes, though not universally, thought be associated with malingering. *Id*. Even if not a product of malingering, Waddell's signs indicate that the pain experienced by the patient is not the product of her physical ailments. *Id*. At that time, Dr. Levenberg referred McCollum for the Functional Capacity Examination discussed previously, which, as noted, also yielded evidence of inappropriate illness behavior and inconsistent effort. Record at 707, 742, 743.

b.     *Dr. Valentino's Report*

In a Medical Source Statement form dated April 4, 2017, orthopedist and spine specialist Steven J. Valentino, DO, indicated that McCollum could sit between four and six hours per day; could stand or walk four hours per day; could occasionally carry ten pounds but no more; could rarely push or pull; and could occasionally reach in all directions, handle, finger or feel. Record at 807. He also indicated that she would occasionally be distracted by her pain, and that she would need an unscheduled break of 15-20 minutes every two hours. Record at 808. She would be absent due to her impairments three days per month. *Id*.

The ALJ gave this report partial weight. Record at 26. She wrote:

Dr. Valentino indicated that he had contact with the claimant on only three occasions, and he supported his very restrictive opinion by citing only two pieces of objective evidence: an electromyogram indicating radiculopathy at C6 and L4, and an MRI showing rotator cuff tendinitis. Neither of these studies support the restrictions Dr. Valentino suggests. Dr. Valentino is not a mental health practitioner, and he did not explain his basis for concluding that the claimant was impaired in her ability to perform psychological functioning. Finally, he offered no basis or explanation for his opinion regarding the claimant's need for unscheduled breaks or regarding likely absenteeism. Dr. Valentino's few notes do not indicate whether he intends his restrictions to be permanent, or effective

11

only until recovery from tendinitis repair. Overall, Dr. Valentino's opinion is speculative and not fully consistent with the medical evidence as a whole.

*Id*.

Some of this is perplexing. Nothing in Dr. Valentino's Medical Source Statement refers to psychological functioning. The opinions regarding breaks, absenteeism, and concentration are all explicitly linked to McCollum's physical impairments. Record at 808. Further, since McCollum's tendon repair took place in October, 2016, there is no reason to think that the limitations imposed by Dr. Valentino six months later were intended to be temporary.

Also, although Dr. Valentino did not treat McCollum for long before submitting his statement, it is notable that his ten-pound lifting restriction, and specification of only limited standing and walking, are identical to Dr. Levenberg's opinions. Since both doctors are treating orthopedists, this is significant, because – under both the old and new regulations – a treating relationship and a relevant medical specialty are factors considered in evaluating a medical opinion. 28 C.F.R. §404.1527(c)(2) and (5) (regulations for cases filed before March 27, 2017); §404.1520c(c)(3) and (4) (regulation for cases filed after March 27, 2017). As noted above, work at the light exertional level can require lifting up to 20 pounds occasionally, and/or "a good deal of" walking. Thus, even if the somewhat subjective specifications as to breaks and absences were legitimately dismissed by the ALJ, it is not clear whether a basis exists for her rejection of Dr. Valentino's limitations in McCollum's ability to stand, walk, and lift.

    3.    *Remand*

As is apparent from the foregoing discussion, there is mixed evidence on the narrow question upon which this case turns: whether McCollum can engage in light work, or is limited to sedentary work. McCollum bears a heavy burden in seeking to show that she is entitled to a finding of disability under Grid Rule 201.14, despite the ALJ's contrary decision. She must

show that, taking the evidence before her as a whole, the ALJ applied incorrect legal standards or reached a conclusion which was not supported by substantial evidence.  42 U.S.C. §405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court of Appeals for the Third Circuit has said that even if the evidence is susceptible to more than one rational interpretation, the ALJ's findings will be upheld if the substantial evidence test is met.  *Sanchez v. Barnhart*, 186 F. App'x 187, 191 (3d Cir. 2006); *Ahearn v. Commissioner of Social Security*, 165 Fed. App'x 212, 215 (3d Cir. 2006); *and see Stockett v. Commissioner of Social Security*, 216 F. Supp.3d 440, 453 (D.N.J. 2016) (citing *Ahearn*).

Nevertheless, leaving aside the reports of John Connor and Dr. Osterman, which do not provide a basis for relief, it is not clear whether substantial evidence supports the ALJ's conclusion that McCollum could engage in light work.  As above, Drs. Levenberg and Valentino, both treating orthopedists, agreed that she could not.  There is no contrary medical opinion in the record.  Objective medical testing shows cervical and lumbar abnormalities at a "mild to moderate" level, with nerve involvement.  Additionally, some of the reasons the ALJ has given for rejecting the reports of Drs. Levenberg and Valentino are unconvincing, as detailed above.

The Commissioner's decision should only be reversed by a District Court, however, where the record has been fully developed and substantial evidence in the record indicates that the claimant is entitled to benefits.  *Gilliland v. Heckler*, 786 F.2d 178, 184-5 (3d Cir. 1986); *Podedworny v. Harris*, 745 F.2d 210, 221-3 (3d Cir. 1984).

Here, the evidence is mixed.  Many of McCollum's physical examination results are benign.  Also notable are the indications from more than one treatment source of non-anatomic pain reactions and inconsistent effort.  Record at 742-4; 207.

Just as importantly, while the record in this case is long, it would benefit from being more fully developed. McCollum's records were not reviewed by an agency medical expert at the state level, and she has never been examined by an independent medical consultant. I therefore recommend remand for referral to an independent medical consultant who can review McCollum's records as a whole and can make an informed decision as to whether a medical examination now would be valuable in determining her condition at the time the ALJ issued her decision.

V.  Conclusion

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part, and the matter remanded to the Agency for the taking of evidence from an independent medical consultant.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE